CARRIE WOODS, ET AL v. J. B. THOMPSON, ET AL.

**Trusts—Fiduciaries Entitled to Compensation.**
Where a fiduciary faithfully performs the duties of a trust, and there is no want of zeal or ability, he is entitled to a reasonable compensation for the purchase and preservation of an estate of infants.

**Attorney and Client—Attorney Acting in Fiducial Capacity—Fees.**
An attorney, acting as a fiduciary, is entitled to a reasonable compensation for defending suits against the estate.

**Same—Fiduciaries not Bound to Provide Funds to Protect the Estate.**
Where a sale of infants' lands are ordered, their trustee is not bound to individually provide funds with which to better protect their interest, a selection by him of their father to purchase the estate on time, is a sufficient compliance.

**Infants—Guardian ad Litem not Appointed—Waiver.**
Under a sale of infants' lands, as legatees, to coerce a debt due by their ancestor, after they have come into court by a guardian of their own selection, he being their father, a natural guardian, and making defense to the action, they cannot complain of the lack of appointment by the court of a guardian ad Litem.

APPEAL FROM MERCER CIRCUIT COURT.

June 18, 1870.

OPINION OF THE COURT BY JUDGE PETERS:

In September, 1868, J. B. Thompson, Jr., and Philip B. Thompson, Jr., filed their petition in equity in the Mercer Circuit Court against J. Thomas Woods, and alleged that previously to that time Philip B. Thompson, Sr., conveyed to said Woods a certain dwelling house, out-houses, grounds, &c., in Harrodsburg, known as the property conveyed by Geo. S. Pettibone to said Thompson in trust for Nancy Hyronemous and children, in July, 1855, for the *partial* consideration of twenty-two hundred and thirty-five dollars and forty-five cents, which said Woods undertook and promised to pay to said J. B. and P. B. Thompson, Jr., on or before the first day of September, 1868, to secure the

payment of which a lien was reserved on said real estate, in the deed. That the money had not been paid, and they prayed for a foreclosure of their lien, and a sale of the property to pay the debt.

At the November term, 1868 of the Mercer Circuit Court, Woods answered the petition, admitting the allegations thereof, and consenting to the sale of the property, and asked that *the whole of it* might be sold.

At the same term of the court, Owen Hyronemous, Carrie Woods, Francis Hyronemous, and Lucy Hyronemous, filed their petition to be made defendants to said suit. They were made defendants, and by consent their petition was taken as their answer. In which they allege that Carrie Woods, F. Hyronemous and Lucy Hyronemous are infants, and petition by H. W. Hyronemous, their father and next friend, that they are the children of Nancy Hyronemous deceased, the said Carrie Woods being the wife of said J. Thomas Woods, and charge, that they have an interest in the property sought to be sold. That the same had been sold under a judgment of said court, by the commissioner, in cases of *Mayhall, &c. v. H. W. Hyronemous*, consolidated, but that the deed from P. B. Thompson, Sr. to J. T. Woods contains some mistakes in its recitals, and which they aver are not true, that the plaintiffs in the suit did not pay for said property $2235.44. That said Thompson purchased said property as trustee of their mother and of themselves, at the commissioner's sale, for the sum of $1707.27, that the deed to Woods reserving a lien for the sum claimed by plaintiffs, was unauthorized, that Woods never accepted it, and had no right to do so, if he had done it, and that plaintiffs had no right to recover any more than the $1707.27, which were paid for the property, with the interest from the date of the sale. And deny that there were any expenses attending the consolidated suits of Mayhall and others against H. W. Hyronemous, other than what are included in, and make up the sum of $1707.27, and for that sum alone the property is liable; that it is worth $7000, and was purchased by said Thompson, although in the name of Woods, for the benefit of the petitioners, they being the only children of Mrs. Nancy Hyronemous, deceased, and that no lien exists on said property any more than the sum of $1707.97.

On the 17th of May, 1869, judgment was rendered in favor

of the plaintiffs, for the sum claimed by them, viz: $2235.44, with interest from the 1st of September, 1868, till paid, and costs, the lien was foreclosed and a sale of all the property adjudged, on a credit of four months.   And so much of the proceeds of the sale as should be required therefore, were to be applied to the payment of the debt to the Thompsons, and the further expenses incurred by the sale.   The bond of the purchaser to be taken payable to the commissoner.

The property was sold at the June county court, 1869, as the commissioner reports, and P. B. Thompson, Jr., became the purchaser at the price of $3,500, and executed bond therefor.

At the term to which the commissioner made his report of the sale, appellants filed exceptions thereto, 8 in number.

1. That the sale was not made by the commissioner in the manner authorized by the judgment.

2. Because the report does not state *"the facts and character of the sale."*

3. The sale was illegally, wrongfully and fraudulently made.

4. Because said property being divisible, the commissioner, before he made the sale, was directed by the attorney for the defendants, to sell only so much of said property as was necessary to pay the debt, interest and cost, which instruction he willfully and wrongfully refused to follow, but sold the whole of the property, against the protest of defendants, and it brought little more than one half of its value.

5. Because said property being divisible, the said Woods, acting for himself and for the other defendants, offered to buy and pay the debt, interest and cost for said proptrey, less fifty feet to be laid off on the south side, the whole length of the lots. Frequently while the commissioner was selling he made said offer, and insisted that the commissioner should cry his bid, but he refused to do so, and was governed by plaintiffs, who directed him not to regard his offers.

6. Because the sale was not properly, sufficiently *or* legally advertised.

7. That said sale was a fraud on the rights of said defendants, and if permitted to stand will result in defrauding defendants out of their interest in said property.

8. They except to said report on the same grounds on which their motion is based to set aside and quash said sale.

The exceptions to the report were overruled, and it was confirmed, the commissioner ordered to collect the money, pay the plaintiffs their debt, and retain the surplus, subject to the future order of the court. With this judgment appellants were dissatisfied, and the evidence heard on the trial of their exceptions to the report of the sale was embodied in a bill of exceptions, which was allowed and enrolled.

They then gave notice to the purchaser of the property of their intention to move the court at its July term, 1869, to quash said sale on grounds stated in their notice. And also notified them, and P. B. Thompson, Sr., of their intention to move said court, on a named day of the term aforesaid, to set aside the judgment of sale for various reasons therein, particularly set forth.

1. Because said judgment was rendered prematurely, and before said action stood for trial, according to the provisions of the *Code*.

2. Because Carrie Woods, formerly Hyronemous, Frank Hyronemous and Lucy Hyronemous, were infants when the action was brought and were still infants, and no defense to the action was made for them, or either of them, by a guardian regularly appointed, a guardian *ad litem,* or any guardian of any kind.

3. Because of misprisions of the clerk of the Mercer Circuit Court in said action, during the progress thereof.

4. Because of other erroneous proceedings in said action against said infants *"which do not appear."*

5. Because the court directed all of the property to be sold instead of directing a sale of only so much of it as would be necessary to pay said debt.

The reasons for quashing the sale, as set forth in the notice for that purpose, are substantially the same as those contained in the exceptions to the commissioner's report of the sale, and for setting aside the judgment; amplified however, and with the addition that during the sale Woods and Kyle, as the agent of appellants, repeatedly offered to pay the debt for the property, less fifty feet taken from the south side, the whole length of the lots, and that they were able to pay said sum, and to give bond with ample surety therefor, their sureties being present and ready to join them in executing a good bond, but that the commissioner refused to accept their offer, or to cry their bid.

All their motions were overruled, and the sale confirmed, and from these several rulings of the court appeals are prosecuted.

First as to the sufficiency of the petition of appellees and their judgment against Woods for a sale of the property to satisfy their claim. P. B. Thompson, Sr., does not deny that he purchased for the benefit of Mrs. Hyronemous' children, and conveyed it to Woods to effectuate that purpose; but so much of that transaction is loudly complained of, as secures to said Thompson in the deed $527.47, the difference between the amount for which he purchased it, and the consideration inserted in his deed to Woods.

His deposition is taken in the case and he explains how this difference is made up; as a faithful fiduciary it was his duty to resist the efforts of the creditors of H. W. Hyronemous to subject the property to the payment of his debts, and that he could not do without the expenditure of money, if he had employed counsel he would have had them to pay, and if he rendered the services himself, being a lawyer, and performed them skillfully and faithfully, no reason is. perceived why he should not be allowed a reasonable compensation. The ancient doctrine that a fiduciary is not entitled to compensation for services rendered to his beneficiaries, does not prevail now, where they are faithful and there is no charge that there was want either of zeal or ability on the part of P. B. Thompson in the defense made by him to the actions, and the sums charged for money expended and services does not seem to be unreasonable, and no error was committed by the court below in allowing it.

P. B. Thompson, Sr., the trustee, had no trust funds in his hands, with which to pay off the debts of Mayhall and others, nor had he the means of his own, as the evidence shows to advance to pay the same, but as the sale was on a credit, and he could buy and furnish the requisite surety, he adopted that as the only plan perhaps, in his power to secure the property to the beneficiaries, and selected Woods, the husband of one of the beneficiaries and related to the others, as the person best suited to undertake the trust, the selection was altogether proper; Woods could have paid the money, as appears from the evidence, before the last sale, and if he would not do it, the Thompsons, who it seems had to borrow the money to pay the debts, were not bound to wait.

The testimony very decidedly preponderates to the conclusion that the deed was made to Woods under an arrangement between

Thompson, Sr., and himself, that he would advance the money and hold the property, he does not deny it in his answer, nor disprove it in his testimony, and why he changed his mind is not explained. Indeed he admits the allegations of the petition in his answer thereto, and offers up but one prayer therein, and that is that *"the whole of said property be sold,"* and consents to sale on condition that it is all sold as it seems.

He, by his marriage, became the guardian of his minor wife, and assumed to act for the other beneficiaries, and if there was any wrong in the judgment which conforms to the prayer in his answer, it would seem that the responsibility should rest on him. But may there not have been a strong sensible reason for desiring that the first sale should cover the whole of the property? It had already been adjudged that it was subject to the debts of H. W. Hyronemous, it was known that it would bring, or was worth more than the amount of the judgments against him, for which it was then to be sold, and if the friends, or a friend of his children could buy it for them at said sale, it would secure it to them. Be the motive whatever it may however, the transfer of the title to Woods is not assailed successfully, and seems to have been the most judicious and prudent disposition that could have been made of the title at the time—in which he acquiesced, and the sale was made in conformity to the judgment, which was the rule for the action of the commissioner, and from it he could not depart. Nor is it perceived how appellant are prejudiced thereby. Their own witnesses prove that the fifty feet taken off the south, the length of the lots, would not, after being severed from the residue of the property, have been worth over $200, and it would have injured the balance at least $1000. But it is not perceived if appellants were so desirous to save the property why they did not purchase it, for it could not matter to them what they bid for the whole of it, they were, and would have been only bound to pay the debt to appellees, the balance would be theirs, so that the amount they bid, no matter how much, would not have increased the amount they would have to pay out. It is utterly impossible to show how they could have been prejudiced by the refusal to recognize their bid for a part of the property, when if they had bought it all at whatever price they may have bid, they would only been required to pay the debt of $2235.44, for which it was sold.

As to the objection that no guardian was appointed to defend for them. They as *actors* had come into court by a guardian of their own selection, and he their father, natural guardian, every defense was made that could have been made for them, they asked no other guardian than the one they had selected, and one for whom Mrs. Carrie Woods had exchanged her husband and legal guardian. There was no failure of defense for want of a proper guardian, and it would have seemed officious in the court to have displaced their parent and natural guardian, to have put another in his place.

Upon a review of the whole case we perceive no error prejudicial to appellants, and the judgment must therefore be *affirmed.*

*Kyle,* for appellants.

*Thompson,* for appellees.